| | |
|---|---|
| **H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,** | Case No. 2:17-cv-0071 |
| Plaintiffs, | |
| vs. | |
| **SUNFROG, LLC d/b/a SUNFROG SHIRTS and JOHN DOES,** | |
| Defendants. | |

## DECLARATION OF LESLIE GUTOWSKI

I, Leslie Gutowski, declare as follows:

1.  I am an Internet & Domain Name Specialist for Kelly IP, LLP ("Kelly IP"), counsel for Plaintiff H-D U.S.A., LLC and Plaintiff Harley-Davidson Motor Company Group, LLC, which is licensed to use trademarks owned by Plaintiff H-D U.S.A., LLC (collectively, "H-D"). I have worked for Kelly IP since May 2013 to the present. Previously, I was a Domain Name Specialist at Finnegan, Henderson, Farabow, Garrett & Dunner from 1999 – 2013, and was Manager of Dispute Administration at Network Solutions, then the only .com registrar, from 1997 – 1999. Collectively, I have more than 18 years of experience working on a wide variety of intellectual property matters relating to the Internet, including conducting investigations regarding unauthorized use of trademarks online, handling take-down complaints to online retailers, drafting demand letters, and arbitration complaints for domain names, among other things.

2.      The facts set forth in this Declaration are based on my personal knowledge and documents obtained in the course of this litigation and the events leading to it.  In addition, I have reviewed the Declarations of Abel Low and Jennifer Dopke filed in this case in support of H-D's Motion for Preliminary Injunction, and I refer to those Declarations below from time to time as the "Low Dec." and the "Dopke Dec."

3.      H-D's trademarks include the HARLEY-DAVIDSON, HARLEY, H-D, HD, FAT BOY, and SPORTSTER word marks; and its Bar & Shield Logo, Willie G. Skull Logo, and Number 1 Logo trademarks shown below (collectively, the "H-D Marks").

| The "Bar & Shield Logo" | The "Willie G. Skull Logo" | The "Number 1 Logo" |
|:---:|:---:|:---:|
| | | |

4.      SunFrog, LLC d/b/a SunFrog Shirts ("SunFrog") operates a website accessible via the domain names SUNFROG.COM and SUNFROGSHIRTS.COM ("SunFrog's Website") on which SunFrog markets, promotes, advertises, and sells apparel, mugs, and other products, including numerous such products bearing one or more of the H-D Marks (collectively, the "Infringing Products").  True and correct copies of screen shots of SunFrog's Website describing its business are attached as Exhibit 1.

5.      SunFrog is a service provider and fulfillment services platform that markets, promotes, advertises, and sells apparel, including t-shirts, sweatshirts, and hoodies, and other products (e.g., mugs) on its Website.  SunFrog's Website includes an online retail marketplace where consumers may purchase the products advertised on that site.  True and correct copies of

screen shots of a representative example of the order and payment screens on SunFrog's Website are attached as Exhibit 2.

6.      SunFrog's Website also provides an online platform where individuals or businesses may open an account and "create" new products to advertise and sell on SunFrog's Website, and where they may advertise and sell products created by others that are already offered on SunFrog's Website. True and correct copies of printouts of SunFrog's Agreement and Terms of Use for Artist Account and/or Seller Marketing Program and true and correct copies of screen shots of SunFrog's Terms & Conditions for Art Submissions from SunFrog's Website are attached as Exhibit 3.

7.      When consumers purchase products on SunFrog's Website, SunFrog handles the payment transaction, then prints and ships, or arranges to have printed and shipped, such products to the consumers. True and correct copies of screen shots of SunFrog's Website describing its printing and shipping services for products sold on SunFrog's Website are attached as Exhibit 4.

8.      SunFrog has admitted in other litigations that it prints the products sold on SunFrog's Website, including in SunFrog's Reply to Plaintiff's Response to Motion To Dismiss, Dkt. 21, p. 4, filed on November 11, 2016 in *Methodist Le Bonheur Healthcare v. SunFrog LLC*, No. 2:2016-cv-02718 (W.D. Tenn. Sept. 2, 2016), a copy of which is attached as Exhibit 5.

9.      In a promotional video on SunFrog's YouTube Channel page, SunFrog describes and illustrates its fulfillment process, including printing and shipping and "quality control at every stage of [a customer's] order." SunFrog Shirts, *SunFrog B2B Multi-Location Apparel*, YOUTUBE (Sept. 2, 2016), youtube.com/watch?v=DtUIVgKtMtQ&t=3s. True and correct copies of screen shots of SunFrog's video regarding its business are attached as Exhibit 6.

10.     SunFrog earns the majority percentage of the retail sales price of the products, and distributes a portion to its sellers.  A true and correct copy of a screen shot from SunFrog's Website listing sellers' percentages is attached as Exhibit 7.

11.     SunFrog's sellers "create" products by selecting "blank" products (e.g., a t-shirt bearing no images, designs, or text) made available by SunFrog and then adding logos, images, and/or text (in SunFrog's terminology, "designs") to be printed on such products.  SunFrog then advertises and offers these finished products bearing the designs on SunFrog's Website.  For example, an individual or business may open an account on SunFrog's Website, select a plain or blank t-shirt from SunFrog's list of available products, and add an image of H-D's HARLEY-DAVIDSON trademark in just a few minutes.  The resulting product is then advertised and sold on SunFrog's Website.  A true and correct copy of a screen shot of SunFrog's Website showing a "blank" product in the design interface of a SunFrog account is attached as Exhibit 8.

12.     SunFrog's sellers are effectively anonymous because they are identified on SunFrog's website only by invented account names and/or numerical codes that do not reveal the sellers' true names or contact information.  True and correct copies of screen shots from SunFrog's Website of representative Infringing Products that I annotated to indicate the sellers' names and numerical codes are attached as Exhibit 9.

13.     Sellers may upload new designs from their own computers or devices to SunFrog's Website to create new products to sell on that site.  Sellers also have the option to select and sell existing designs of others that SunFrog makes available and provides to sellers in its online database titled "All SunFrog Art."  The All SunFrog Art database contains logos and images uploaded by SunFrog sellers, and is searchable by keyword and categories (e.g., "Automotive").  In particular, SunFrog's All SunFrog Art database makes available and provides

to sellers numerous logos and images containing the H-D Marks (the "Infringing Designs") that can be immediately applied to numerous blank products of various styles, colors, and sizes, and offered for sale by sellers with just a few keystrokes. SunFrog's searchable All SunFrog Art database, moreover, makes it easy for sellers to locate Infringing Designs containing the H-D Marks as they are instantly accessible by searching for the H-D Marks of interest (e.g., HARLEY, HARLEY-DAVIDSON, HD).

14. On April 8, 2017, I logged into my account on SunFrog's Website that I set up for purposes of this case, and clicked on the "collections" tab in the account. Collections are groups of products compiled by a seller and offered for sale on a page of SunFrog's Website at a particular SunFrog URL assigned to each collection. I named my new collection "Biker." The page of SunFrog's Website that allows account holders to add products to a collection displays a search box for the "All SunFrog Art" database. I entered HARLEY in the database search box, and received a list of designs that I could apply to blank products and add to my collection. I also conducted separate searches for HARLEY-DAVIDSON and H-D, and received additional search results of various designs that I could add to my collection. Each of my three searches immediately returned Infringing Designs that I could apply to blank products and sell. I added thirty-five (35) Infringing Designs to my collection. I then clicked on SunFrog's "download catalog" button to obtain the list of products in my collection, and was provided with a spreadsheet file indicating that the 35 Infringing Designs would be applied to 1,357 apparel products that could be offered for sale on my collection page of SunFrog's Website. True and correct copies of screen shots from SunFrog's Website showing the database search box and the 35 Infringing Designs referenced above that were available on April 8, 2017 in the All SunFrog Art database are attached as Exhibit 10. On April 10, 2017, I again logged into my SunFrog

account, and found six (6) additional Infringing Designs in the "All SunFrog Art" database that could be applied to blank products and offered for sale on my collection page of SunFrog's Website. True and correct copies of screen shots from SunFrog's Website showing the 6 additional Infringing Designs referenced above that were available on April 10, 2017 are attached as Exhibit 11.

15. In addition to advertising products directly on SunFrog's Website, SunFrog facilitates the advertisement and promotion of such products on social media sites (e.g., Facebook) by providing to its sellers sales tracking tools and tutorials for the marketing of such products on social media. True and correct copies of screen shots from SunFrog's Website showing its social media tracking and tutorials are attached as Exhibit 12.

16. SunFrog has advertised, promoted, and sold hundreds, if not thousands, of products bearing the H-D Marks (as defined above, the "Infringing Products"). In March and April of 2017 alone, after and at the same time that H-D had been repeatedly submitting objections to SunFrog's violations of the H-D Marks, the Infringing Products offered on SunFrog's Website featured more than 100 different Infringing Designs comprised of or containing the H-D Marks on thousands of products. A chart listing more than 100 different Infringing Designs on Infringing Products available in March and April 2017 and SunFrog's URLs for such Infringing Products is attached as Exhibit 13. As shown on Exhibit 13, SunFrog assigns a unique URL to each product sold on SunFrog's Website. (See Low Dec., Ex. 3 and Dopke Dec., Ex. 3 for charts listing representative examples of H-D's takedown complaints submitted by H-D to SunFrog.)

17. The Infringing Products sold on SunFrog's Website have been designed and/or offered by numerous sellers that are anonymous as expressly allowed by SunFrog. Such sellers

include "harley davidson" and "HD," neither of which are H-D itself, as well as "LOKI," "POKA," "81088,"  and "75237," among many others.  See Exhibit 13 for various sellers' names.  A true and correct copy of a screen shot of an Infringing Product offered by seller 81088 is attached as Exhibit 14.  (See also Low Dec., Ex. 3, Nos. 16-29 for the seller IDs POKA and 75237.)

18.     Based on my review of the Declarations of Abel Low and Jennifer Dopke submitted in connection with H-D's Motion for Preliminary Injunction, I understand that SunFrog has responded to at least some of H-D's takedown complaints by removing the sales pages for the complained-of Infringing Products (i.e., the pages on SunFrog's Website on which the Infringing Products can be purchased).

19.     Even after SunFrog "removed" Infringing Products in response to H-D's takedown complaints referenced above, SunFrog's contracts with its sellers (see Exhibit 3) expressly permit it to fulfill orders for "removed" products and keep all proceeds from products that are the subject of infringement complaints.  The relevant Sections of SunFrog's Agreement And Terms of Use for Artist Account and/or Seller Marketing Program (see Exhibit 3) are excerpted below (emphasis added):

> 7.2 SunFrog **reserves the right to retain Royalties for sales of any Products which involve a Design that violates this Agreement or constitutes a breach of Your warranties or representations** and furthermore to redirect any such retained Royalties to a charity of SunFrog's choice or as otherwise stated in this Agreement.

> 14.6 **All rights herein as to a Design shall terminate** upon cancellation of this Agreement, or **in the even[t]** SunFrog declines to display or sell a Design, or **removes a Design** from the SunFrog Platform, **except that SunFrog may fulfill any orders placed prior to termination** and SunFrog may continue to use a previously active Design in marketing a promotional materials if such materials were created prior to removal of the Design from the SunFrog Platform. Furthermore, upon termination, You will not accrue any more Sales Commissions or Artist Royalties and Your access to My Manager will be suspended at that time.

19.4 . . . . FURTHERMORE, IN THE EVENT THAT SUNFROG, ITS ATTORNEY, AGENTS, REPRESENTATIVES, AGENTS OR ASSIGNS DETERMINES THAT A DESIGN DOES INFRINGE UPON THE INTELLECTUAL PROPERTY RIGHTS OF A THIRD-PARTY, **SUNFROG MAY WITHHOLD ANY AND ALL PAYMENTS DUE TO THE PERSON UPLOADING THE INFRINGING DESIGN (REGARDLESS OF WHETHER THOSE FUNDS ARE RELATED TO THE SALE OF THE INFRINGING DESIGN OR OTHERWISE) WITH SAID PAYMENTS INSTEAD BEING FORWARDED TO A CHARITY OF SUNFROG'S CHOOSING.** YOU SPECIFICALLY AUTHORIZE THIS COURSE OF ACTION AND HEREBY RELEASE SUNFROG, ITS REPRESENTATIVES, ATTORNEYS, AGENTS, OR ASSIGNS FROM ANY AND ALL LIABILITY FOR PERMANENTLY WITHHOLDING AND/OR FOR THE FORWARDING OF SUCH PAYMENTS TO CHARITY PURSUANT TO THE ABOVE-DESCRIBED CIRCUMSTANCE.

19.5 YOU UNDERSTAND THAT SUNFROG HAS ADOPTED A "REPEAT INFRINGER" POLICY WHEREIN AN ACCOUNT WILL BE TERMINATED AND A PERSON PERMANENTLY BANNED FROM USING, OR EVEN ACCESSING, THE SUNFROG PLATFORM IF SUNFROG, IN ITS SOLE DISCRETION, DETERMINES THAT AN ACCOUNT HOLDER IS A REPEAT INFRINGER. A DESIGNATION AS A "REPEAT INFRINGER" WILL RESULT IN THE EMAIL ADDRESS AND THE INTERNET PROTOCOL ADDRESS ("IP ADDRESS") OF THE PERSON SO DESIGNATED BEING PERMANENTLY BLOCKED FROM ACCESSING THE SUNFROG PLATFORM. **IF AN ACCOUNT IS TERMINATED PURSUANT TO THE REPEAT INFRINGER POLICY, ANY AND ALL MONIES DUE AND OWING TO THE ACCOUNT HOLDER AT THE TIME OF THE DESIGNATION MAY BE WITHHELD AND REDIRECTED TO A CHARITY OF SUNFROG'S CHOOSING.** YOU SPECIFICALLY AUTHORIZE THIS COURSE OF ACTION AND HEREBY RELEASE SUNFROG, ITS REPRESENTATIVES, ATTORNEYS, AGENTS, OR ASSIGNS FROM ANY AND ALL LIABILITY FOR PERMANENTLY WITHHOLDING AND/OR FORWARDING OF SUCH MONIES FOR THE ABOVE-STATED REASONS.

20.     The relevant Sections of SunFrog's Terms and Conditions for Art Submission

(see Exhibit 3) are excerpted below (emphasis added):

5.2  SunFrog **may not pay You** Royalties for sales of any Products which incorporate a Design that violates this Agreement or constitutes a breach of Your warranties or representations.

7.7  **All rights herein as to the Design shall terminate** upon cancellation of this Agreement, or **in the event SunFrog** declines to display or sell the Design, or **removes the Design** from the SunFrog site, **except that SunFrog may fulfill any orders placed prior to termination** and SunFrog may continue to use a previously active Design in marketing and promotional materials if such materials were created prior to removal of the Design from the SunFrog site.

21.     Even after SunFrog "removed" Infringing Products in response to H-D's takedown complaints as described below, SunFrog continued to use various unique URLs associated with the "removed" Infringing Products, namely: (a) product URLs, (b) sales-tracking URLs, and (c) image URLs. Examples of each of these types of continued uses are described in subparts i-v below.

i) Product URLs are used for sales pages on SunFrog's Website that display the product for sale and on which the product can be purchased. Each product for sale on SunFrog's Website has a separate sales page with a unique URL. For example, SunFrog continues to use product URLs such as https://www.sunfrog.com/LifeStyle/**HARLEY-DAVIDSON**-159675044-Black-Guys.html, which is the URL for a sales page for an Infringing Product that SunFrog "removed" in October 2016. Despite "removing" the Infringing Product months ago, SunFrog continues to use that product URL for a page of SunFrog's Website that displays dozens of shirts. True and correct copies of screen shots, which are dated May 19, 2017, of SunFrog's Website showing its continued use of the product URL https://www.sunfrog.com/LifeStyle/**HARLEY-DAVIDSON**-159675044-Black-Guys.html, together with examples of six additional product URLs for "removed" Infringing Products that SunFrog continues to use after H-D's takedown complaints on various dates in October 2016, January 2017, and February 2017,are attached as Exhibit 15. (See Dopke Dec., Exhibit 3, Nos. 4, 1, 2, 3, 7, 10, and 178.)

ii) Sales-tracking URLs are used for sales pages on SunFrog's Website, and include a tracking element such as the seller's 5-digit ID at the end of the URL. SunFrog continues to use sales-tracking URLs such as https://www.sunfrog.com/LifeStyle/**Harley-Davidson**-Biker-Brown-Guys.html?47440, which is a sales-tracking URL for an Infringing Product that was located at the product URL https://www.sunfrog.com/LifeStyle/Harley-Davidson-Biker-Brown-Guys.html (i.e., the URL without the tracking ID 47440). Despite SunFrog's "removal" of the Infringing Product in January 2017 in response to H-D's takedown complaint, SunFrog currently uses the sales-tracking URL for a page of SunFrog's Website that displays dozens of shirts. True and correct copies of screen shots of SunFrog's Website showing its continued use of the above sales-tracking URL for a "removed" Infringing Product are attached as Exhibit 16. (See Dopke Dec., Exhibit 3, No. 23.)

iii) SunFrog also continues to use sales-tracking URLs for "removed" Infringing Products for a page of SunFrog's Website that displays a message inviting the consumer to "start over" (i.e., conduct a search on SunFrog's Website for other products). True and correct copies of screen shots of SunFrog's Website showing its continued use of sales-tracking URLs for "removed" Infringing Products for a SunFrog message inviting the consumer to "start over" are attached as Exhibit 17. (See Dopke Dec., Ex. 3, No. 180, 181.)

iv)  Image URLs are used for pages of SunFrog's Website that display pictures of each Infringing Product.  Despite "removing" the Infringing Products, SunFrog continues to use its image URLs for such "removed" Infringing Products for pages of SunFrog's Website that display pictures of the Infringing Products.  True and correct copies of screen shots of SunFrog's Website dated May 23, 2017 showing its continued use of image URLs for pages of its Website that display Infringing Products "removed" on May 1, 2017 are attached as Exhibit 18.  (See Low Dec., Ex. 3., Nos. 548, 539; and Low Dec., Exs. 4, 6, 7-8.)

v)  In addition to continuing to use image URLs on SunFrog's Website, SunFrog's image URLs for "removed" Infringing Products are used on other websites to display the pictures of the Infringing Products and to link to SunFrog's Website.  Specifically, consumers who click on such images for "removed" Infringing Products displayed on other websites will be linked to SunFrog's Website, and may receive either a page of SunFrog's Website advertising other SunFrog products for sale or a SunFrog message inviting the consumer to search for products on SunFrog's Website.  For example, the image URL https://images.sunfrogshirts.com/2016/07/06/**Harley-Dav**-Brown-_w91_-back.jpg is used for a page of SunFrog's Website that displays an Infringing Product that was "removed" in January 2017, and is used on another website to display the Infringing Product and to link to SunFrog's Website via the sales-tracking URL https://www.sunfrog.com/LifeStyle/Harley-Davidson-Biker-Brown-Guys.html?47440.  True and correct copies of screen shots showing continued use of the image URL https://images.sunfrogshirts.com/2016/07/06/**Harley-Dav**-Brown-_w91_-back.jpg and sales-tracking URL https://www.sunfrog.com/LifeStyle/Harley-Davidson-Biker-Brown-Guys.html?47440 are attached as Exhibit 19.  (See also Exhibit 16; see Dopke Dec., Exhibit 3, No. 23.)

22.  SunFrog's product and sales-tracking URLs are widely distributed on social media and other websites.  True and correct copies of screen shots of five (5) Facebook ads for five (5) Infringing Products that have a combined total of more than 116,000 reactions (e.g., likes), more than 3,300 comments, and more than 31,000 shares, are attached as Exhibit 20.

23.  If a consumer encounters and clicks on one of SunFrog's product or sales-tracking URLs for a "removed" Infringing Product on a social media page or other website, the consumer will be linked to SunFrog's Website, and may receive either a page of SunFrog's Website advertising other SunFrog products for sale or a page of SunFrog's Website that displays a message inviting the consumer to conduct a search on SunFrog's Website for products as

described above.  In this way, SunFrog drives traffic to its Website using its product and sales-tracking URLs for "removed" Infringing Products, including URLs containing the H-D Marks.

24.    In addition to continued use of its various URLs for "removed" Infringing Products, SunFrog has continued in some cases to use pictures of  "removed" Infringing Products in search results on SunFrog's Website.  Specifically, SunFrog's Website has a search box where consumers can search a term (e.g., "Harley-Davidson") and receive a page of products for sale (e.g,, shirts bearing the HARLEY-DAVIDSON mark).  Consumers who click on a product picture in SunFrog's search results are usually linked to the sales page where such product can be purchased.  In some cases for "removed" Infringing Products shown in search results, SunFrog does not link to the sales page but instead links to another page of SunFrog's Website displaying other SunFrog products for sale.

25.    For example, SunFrog has recently used a pictures of a "removed" Infringing Product in search results on SunFrog's Website.  Specifically, on May 19, 2017, I searched for HARLEY on SunFrog's Website, and that search returned many shirts, including the Infringing Product shown below:



When I clicked on the Infringing Product shown above, I was not connected to the sales page where the Infringing Product could be purchased.  Instead, I was connected to a page of

SunFrog's Website showing dozens of other shirts for sale. True and correct copies of screen shots showing the above Infringing Product in search results and the connecting sales page for other products for sale on SunFrog's website are attached as Exhibit 21. (See Low Dec., Ex. 3, No. 477.)

26.     In another example of SunFrog's use of a picture of an Infringing Product to advertise and offer for sale other SunFrog products, on May 19, 2017, I searched for HARLEY on SunFrog's Website, and that search returned many shirts, including the Infringing Product shown below:



When I clicked on the Infringing Product shown above, I was not connected to the sales page where the Infringing Product could be purchased. Instead, I was connected to a page of SunFrog's Website showing dozens of other shirts for sale. True and correct copies of screen shots showing the above Infringing Product in search results and the connecting sales page for other products for sale on SunFrog's website are attached as Exhibit 22.

27.     Following H-D's numerous takedowns submitted to SunFrog in March and April, SunFrog has continued in May 2017 to advertise and offer for sale numerous Infringing Products bearing the H-D Marks on SunFrog's Website. Attached as Exhibit 37 is a true and correct copy

of a May 18, 2017 printout showing numerous Infringing Products for sale on SunFrog's Website that day. Attached as Exhibit 23 is a chart listing 115 examples of Infringing Products available for sale on SunFrog's Website during May 2017. 91 of these Infringing Products on Exhibit 23 (see Nos. 1-91 on Exhibit 23) were also available on SunFrog's website during March and/or April 2017. For convenience, the "Exhibit 13 Design Nos." on Exhibit 23 refer to the corresponding Infringing Products on Exhibit 13. Exhibit 23 also includes 13 Infringing Products that bear new Infringing Designs that were not seen before May 2017 (see Nos. 92-103 on Exhibit 23).

28. SunFrog continues to advertise and sell numerous Infringing Products bearing specific H-D Marks used on Infringing Products that were the subject of H-D's prior takedown complaints. Below are representative examples of Infringing Products that SunFrog offered on SunFrog's Website in April and/or May 2017 that bear the identical H-D Marks cited in H-D's numerous takedown complaints for Infringing Products that H-D submitted to SunFrog in March and/or April 2017.





True and correct copies of screen shots of SunFrog's Website showing its offering of the above Infringing Products in April and May of 2017 are attached as Exhibit 24.

29.     SunFrog has continued to advertise and sell many Infringing Products bearing Infringing Designs *identical* to those displayed on Infringing Products that were the subject of H-D's prior takedown complaints.  For example, on March 31, 2017, H-D objected to numerous Infringing Products, including the three Infringing Products shown below that SunFrog "removed."  Following these takedowns, dozens of new Infringing Products bearing the identical Infringing Designs were posted on SunFrog's Website in early April and were still available as recently as May 15, 2017.  Examples of this practice are provided below in subparts  i-iv below.

     i)  On April 8, 2017, I found the Infringing Product shown below for sale on SunFrog's Website:



The Infringing Product shown above bears the identical Infringing Design as an Infringing Product that SunFrog "removed" on April 2, 2017 in response to H-D's March 31, 2017 takedown complaint (see Low Dec., Ex. 3, No. 422). On April 11, 2017, I found additional Infringing Products bearing the same Infringing Design for sale on SunFrog's Website. On May 15, 2017, I reviewed the SunFrog sales page for the above Infringing Product, and found additional Infringing Products bearing the same Infringing Design available for sale on SunFrog's Website. A true and correct copy of a screen shot dated April 8, 2017 from SunFrog's Website showing the above Infringing Product is attached as Exhibit 25. True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website showing additional Infringing Products in various style and color options bearing the same Infringing Design are attached as Exhibit 26. A true and correct copy of a screen shot dated May 15, 2017 from SunFrog's Website showing the above Infringing Product for sale is attached as Exhibit 27.

ii) On April 8, 2017, I found the identical Infringing Design available in SunFrog's All SunFrog Art database where it could be applied to new products offered by other sellers:



True and correct copies of screen shots of SunFrog's Website showing the above Infringing Design as available in the All SunFrog Art database and the image URL page of the Infringing Design on SunFrog's Website are attached as Exhibit 28.

iii)  On April 11, 2017, I found the Infringing Product shown below for sale on SunFrog's Website:



The Infringing Product shown above bears the identical Infringing Design as an Infringing Product that SunFrog "removed" on April 2, 2017 in response to H-D's March 30, 2017 takedown complaint (see Low Dec., Ex. 3., No. 419).  True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website of the Infringing Product shown above and the page associated with the image URL for the Infringing Product, https://images.sunfrogshirts.com/**2017/04/01**/81088-1491021767929-Gildan-Tan-Black-_w92_-front.jpg (emphasis added), are attached as Exhibit 29.  True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website showing additional Infringing Products in various styles and colors options bearing the same Infringing Design are attached as Exhibit 30.  True and correct copies of screen shots dated May 15, 2017 from SunFrog's Website showing the same Infringing Products in various style and color options are attached as Exhibit 31.

iv)  On May 1, 2017, I found the Infringing Product shown below on SunFrog's Website:



The Infringing Product shown above bears the identical Infringing Design as an Infringing Product that SunFrog "removed" on April 10, 2017 in response to H-D's April 7, 2017 takedown complaint (see Low Dec., Ex. 3., No. 431). True and correct copies of screen shots dated May 1, 2017 from SunFrog's Website of the Infringing Product shown above and additional Infringing Products in various style and colors options, and the page associated with the image URL for the above Infringing Product, https://images.sunfrogshirts.com/**2017/04/09**/81088-1491796788954-Gildan-Hoo-White-_w91_-front.jpg, are attached as Exhibit 32. True and correct copies of screen shots dated May 15, 2017 from SunFrog's Website showing the same Infringing Products in various style and color options are attached as Exhibit 33.

30.     Since October 2016, based on my review of pages of SunFrog's Website, SunFrog has expanded its product offerings from adult shirts, sweatshirts, and hoodies to include leggings (in November 2016), youth t-shirts (in January 2017), and mugs (in February 2017). SunFrog also expanded its product offerings to posters and canvas prints (in March 2017). True and correct copies of screen shots of SunFrog's Facebook page describing its product expansions are attached as Exhibit 34.

31.     Based on my review of pages of SunFrog's Website, SunFrog has offered leggings, youth t-shirts, and mugs bearing the H-D Marks (i.e., Infringing Products) after such products became available. See Exhibit 13 for examples of leggings and mugs. See Exhibit 33 for an example of youth t-shirts in the drop-down product lists on SunFrog's sales page for an Infringing Product.

32.     Following SunFrog's recent expansion of its product offerings to mugs, SunFrog now offers numerous mugs for sale that bear the H-D Marks, including the representative examples shown below:

  

True and correct copies of screen shots of SunFrog's Website showing the above Infringing Products are attached as Exhibit 35.

33.    SunFrog continues to offer Infringing Products in the form of mugs after it "removed" Infringing Products in response to H-D's takedown complaints about certain mugs (see Low Dec., Ex. 3, Nos. 466-467.)  These Infringing Products bear specific H-D Marks that were used on apparel Infringing Products that were the subject of H-D's prior takedown complaints.  A true and correct copy of a May 23, 2017 printout from SunFrog's Website showing additional Infringing Products (mugs) bearing H-D's Marks that were the subject of prior takedown complaints by H-D is attached as Exhibit 36.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Dated:  May 25, 2017                    By: _Leslie Gutowski_

                                             Leslie Gutowski

# Exhibit Index for Declaration of Leslie Gutowski

1 -   True and correct copies of screen shots of SunFrog's website describing its business

2 -   True and correct copies of screen shots of a representative example of the order and payment screens on SunFrog's Website

3 -   True and correct printouts of SunFrog's Agreement And Terms of Use For Artist Account And/Or Seller Marketing Program and screen shots of SunFrog's Terms & Conditions for Art Submissions from SunFrog's Website

4 -   True and correct copies of screen shots of SunFrog's Website describing its printing and shipping services for products sold on SunFrog's Website

5 -   A copy of SunFrog's Reply to Plaintiff's Response to Motion To Dismiss, Dkt. 21, filed on November 11, 2016 in *Methodist Le Bonheur Healthcare v. SunFrog LLC*, No. 2:2016-cv-02718 (W.D. Tenn. Sept. 2, 2016)

6 -   True and correct copies of screen shots of SunFrog's video regarding its business.

7 -   True and correct copy of a screen shot from SunFrog's Website listing sellers' percentages

8 -   True and correct copy of a screen shot of SunFrog's Website showing a "blank" product in the design interface of a SunFrog account

9 -   True and correct copies of screen shots from SunFrog's Website of representative Infringing Products that I annotated to indicate the sellers' names and numerical codes

10 -  True and correct copies of screen shots from SunFrog's Website showing the database search box and the 35 Infringing Designs available on April 8, 2017 in the All SunFrog Art database

11 -  True and correct copies of screen shots from SunFrog's Website showing the 6 additional Infringing Designs available on April 10, 2017

12 -  True and correct copies of screen shots from SunFrog's Website showing its social media tracking and tutorials

13 -  Chart listing more than 100 different designs on Infringing Products available in March and April 2017 and SunFrog's URLs for such Infringing Products

14 -  True and correct copy of a screen shot of an Infringing Product offered by seller 81088

15 -   True and correct copies of screen shots, which are dated May 19, 2017, of SunFrog's Website showing its continued use of the product URL https://www.sunfrog.com/LifeStyle/**HARLEY-DAVIDSON**-159675044-Black-Guys.html, together with examples of six additional product URLs for "removed" Infringing Products that SunFrog continues to use after H-D's takedown complaints on various dates in October 2016, January 2017, and February 2017

16 -   True and correct copies of screen shots of SunFrog's Website showing its continued use of https://www.sunfrog.com/LifeStyle/**Harley-Davidson**-Biker-Brown-Guys.html?47440, the sales-tracking URL for a "removed" Infringing Product

17 -   True and correct copies of screen shots of SunFrog's Website showing its continued use of sales-tracking URLs for "removed" Infringing Products for a SunFrog message inviting the consumer to "start over"

18 -   True and correct copies of screen shots of SunFrog's Website dated May 23, 2017 showing its continued use of image URLs for pages of its Website that display Infringing Products "removed" on May 1, 2017

19 -   True and correct copies of screen shots showing continued use of the image URL https://images.sunfrogshirts.com/2016/07/06/**Harley-Dav**-Brown-_w91_-back.jpg and sales-tracking URL https://www.sunfrog.com/LifeStyle/Harley-Davidson-Biker-Brown-Guys.html?47440

20 -   True and correct copies of screen shots of five (5) Facebook ads for five (5) Infringing Products that have a combined total of more than 116,000 reactions (e.g., likes), more than 3,300 comments, and more than 31,000 shares

21 -   True and correct copies of screen shots showing an Infringing Product in search results and the connecting sales page for other products for sale on SunFrog's website

22 -   True and correct copies of screen shots showing an Infringing Product in search results and the connecting sales page for other products for sale on SunFrog's website

23 -   Chart listing 115 examples of Infringing Products available for sale on SunFrog's Website during May 2017

24 -   True and correct copies of screen shots of SunFrog's Website showing its offering of Infringing Products in April and May 2017

25 -   True and correct copy of a screen shot dated April 8, 2017 from SunFrog's Website showing the Infringing Product

26 -   True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website showing additional Infringing Products in various styles and colors options that bear the same Infringing Design

27 -   True and correct copy of a screen shot dated May 15, 2017 from SunFrog's Website showing the Infringing Product for sale

28 -   True and correct copies of screen shots of SunFrog's Website showing the Infringing Design as available in the All SunFrog Art database and the image URL page of the Infringing Design on SunFrog's Website

29 -   True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website of the Infringing Product and the page associated with the image URL for the Infringing Product, https://images.sunfrogshirts.com/2017/04/01/81088-1491021767929-Gildan-Tan-Black-_w92_-front.jpg

30 -   True and correct copies of screen shots dated April 11, 2017 from SunFrog's Website showing additional Infringing Products in various styles and colors options that bear the same Infringing Design

31 -   True and correct copies of screen shots dated May 15, 2017 from SunFrog's Website showing the same Infringing Products in various styles and colors options

32 -   True and correct copies of screen shots dated May 1, 2017 from SunFrog's Website of the Infringing Product and additional Infringing Products in various styles and colors options, and the page associated with the image URL for the Infringing Product, https://images.sunfrogshirts.com/**2017/04/09**/81088-1491796788954-Gildan-Hoo-White-_w91_-front.jpg

33 -   True and correct copies of screen shots dated May 15, 2017 from SunFrog's Website showing the same Infringing Products in various styles and colors options

34 -   True and correct copies of screen shots of SunFrog's Facebook page describing its product expansions

35 -   True and correct copies of screen shots of SunFrog's Website showing three Infringing Products (mugs)

36 -   True and correct copy of a printout from SunFrog's Website showing additional Infringing Products (mugs) bearing H-D's Marks

37 -   True and correct copy of a printout dated May 18, 2017 from SunFrog's Website showing numerous Infringing Products for sale on that day