IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, | ) ) ) |
| Plaintiffs, | ) ) Case No. 17-cv-711-JPS |
| v. | ) ) **Oral Argument Requested** ) |
| SUNFROG, LLC d/b/a SUNFROG SHIRTS and JOHN DOES, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUNFROG'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.    PLAINTIFFS HAVE NOT AND CANNOT PLAUSIBLY ALLEGE FACTS TO SUPPORT THE SEVEN CLAIMS MADE IN THEIR COMPLAINT ................................................... 3

    II.    PLAINTIFFS HAVE NOT AND CANNOT ADEQUATELY ALLEGE THAT SUNFROG USED ANY OF THE ASSERTED TRADEMARKS IN COMMERCE ................................................ 4

    III.    SUNFROG IS PROTECTED BY THE SAFE HABOR PROVISION OF THE COPYRIGHT ACT ...................................................... 6

    IV.    SUNFROG IS AN INNOCENT PRINTER AND CANNOT BE LIABLE FOR MONETARY DAMAGES ............................................... 7

CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................. 3, 4
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .............................................................. 3, 4
*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.,* 707 F.3d 869, 871 (7th Cir.2013) ............... 3
*Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012) ...................................................... 6
*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ................... 3
*Harley-Davidson, Inc. v. Selectra Intern. Designs, Ltd.*, 855 F.Supp. 275, 278 (E.D. Wisc. 1994),
  *rev'd on other grounds*, 861 F.Supp. 754 ................................................................................ 5
*Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082, 1093 (C.D. Cal. 2001) ........................................ 6
*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) .................................................. 6
*In re Petition to Inspect and Copy Grand Jury Materials*, 659 F.2d 800 (7th Cir. 1981) .............. 8
*Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis.2d 226, 247 (1996) .......... 5
*New York Times v. Sullivan*, 376 U.S. 254 (1964) .......................................................................... 8
*Oneida Tribe of Indians of Wisconsin v. Harms*, 2005 WL 2758038, at *1 (E.D. Wisc. 2005) .... 4
*Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638, n.8 (7th Cir. 2001) .................................... 4
*Perfect 10, Inc. v. CCBill LLC*, 2007 WL 1557475, at *11 (9th Cir. 2007) .................................... 6
*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1183 (C.D. Cal. 2002) ............. 7
*Rizzo v. South Bend Sporting Goods*, 2009 WL 2495461, *3 (W.D. Wisc. 2009) ......................... 9
*See MGM, Inc. v. Grockster*, 545 U.S. 913, 926 (2005) ................................................................. 7
*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d
  574 (1984) .................................................................................................................................. 6
*Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ............................................................ 4
*World Wrestling Federation, Inc. v. Posters, Inc.*, 2000 WL 1409831, at *2 (N.D. Ill. 2000) .. 7, 8

**Federal Statutes**

§ 1114 ................................................................................................................................................ 7
§ 512(i)(1)(A) ................................................................................................................................... 6
15 U.S.C. § 1114(1) .......................................................................................................................... 1
15 U.S.C. § 1114(2)(A) ..................................................................................................................... 7
15 U.S.C. § 1125 ............................................................................................................................... 4
15 U.S.C. § 1125(a)(1)(A) ................................................................................................................ 1
15 U.S.C. § 1125(c) ...................................................................................................................... 1, 5
15 U.S.C. § 1127 ............................................................................................................................... 4
17 U.S.C. § 101 *et seq.* .................................................................................................................... 1
17 U.S.C. § 512(c)(1)(B) .................................................................................................................. 6
17 U.S.C. § 512(d) ............................................................................................................................ 6

**State Statutes**

§ 132.033(1) ...................................................................................................................................... 9
Wis. Stat. § 132 *et seq.* .................................................................................................................... 1
Wis. Stat. § 132.033(2)(b) ................................................................................................................ 9

**Treatises**

6 McCarthy on Trademarks and Unfair Competition § 32:121.60 (4th ed.) .................................. 4
McCarthy § 32.201 ........................................................................................................................ 4

**PRELIMINARY STATEMENT**

Defendant SunFrog, LLC ("SunFrog"), by and through its attorneys, Revision Legal, PLLC and Andrus Intellectual Property Law, LLP, hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Complaint, which recites claims for:

(1) trademark counterfeiting under 15 U.S.C. § 1114(1);

(2) trademark infringement under 15 U.S.C. § 1114(1);

(3) trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a)(1)(A);

(4) trademark dilution under 15 U.S.C. § 1125(c);

(5) copyright infringement under 17 U.S.C. § 101 *et seq.*;

(6) trademark infringement under Wis. Stat. § 132 *et seq.*; and

(7) common law trademark infringement, unfair competition, and misappropriation.

(Pls.' Compl. ¶¶ 92-142, ECF No. 1.) All seven claims are based on the assumption that SunFrog is *directly* liable for each of the millions of designs uploaded by users of SunFrog's website, <SunFrog.com> (the "Website"), no matter how ephemeral the image and no matter the steps taken by SunFrog to frustrated would be infringers and ensure that any monies gleaned from such infringers is directed to rights holders. SunFrog enjoyed explosive growth during the past two years that made creating a space for artists to share and make money from their original artwork a challenge. SunFrog had to advance the ball on several fronts simultaneously to maintain the high level of service users expect from SunFrog while finding creative, efficient methods of driving the few bad actors misusing the Website away.

Started in 2013, SunFrog has provided an increasingly sophisticated website that streamlines and automates the creation of t-shirts, sweatshirts, tights, and, recently, hats featuring

1

designs and text uploaded by its users. When users upload designs and/or text, they can also choose from a variety of colors and styles of apparel with which their designs will be paired. When a user's design is paired with a clothing item, a mockup showing how the item would look appears on SunFrog's website and is associated with that user (a "Mockup"). SunFrog's website allows users to set the price of their Mockups within a pre-set range. SunFrog's automated printers do not print anything until a user views a Mockup and purchases it. When a user purchases an item, SunFrog facilitates the transaction, remits a portion of the purchase price to the designer, and retains a portion of the purchase price as its service fee.

SunFrog does not create, upload, or curate the Mockups listed on its website. It cannot manually review the roughly twenty million Mockups, with thousands added daily, uploaded by its users. Even if SunFrog could review each Mockup, it would be impossible to determine whether the user who uploaded that design did so with or without the consent of any presumed rights holder. Users who create Mockups on SunFrog's website must affirmatively check a box stating that they are not violating the intellectual property rights of any third parties by uploading and selling Mockups through SunFrog's website. SunFrog reserves the right to terminate users for misrepresenting that they own rights to a Mockup when they do not, and SunFrog frequently terminates repeat infringers. When SunFrog terminates a user, it blocks the email address associated with the financial service provider that bad actor uses to collect money from sales through SunFrog's website. Blocking repeat infringers in this way makes it much more difficult for those users to create a new account because they would have to setup a new account with a financial service provider.

While SunFrog has been active since 2013, it experienced explosive growth during the past two years. With such growth came a slew of publicity and a slew of lawsuits. SunFrog has

2

worked to develop tools that not only keep pace with the demand created by users wanting to create and upload Mockups, it has worked to develop tools to curb intellectual property infringement and give rights holders the ability to notify SunFrog of allegedly infringing Mockups with ease. One recent example is the evolution of SunFrog's online infringement reporting tool, which now allows rights holders to report multiple allegedly infringing links at once. Even though each reported link must be reviewed by someone working for SunFrog who has been trained to understand fair use and other thorny intellectual property issues while a rights holder may submit hundreds of links for review at once, reported links are removed, for the most part, within two days if removal is appropriate. Many links to allegedly infringing Mockups are disabled within hours of being reported. The vast majority of Mockups, including allegedly infringing Mockups, never result in a single sale. Another tool developed by SunFrog to protect rights holders allows for the profits from allegedly infringing items to be diverted from bad actors' accounts into rights holders' accounts.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT AND CANNOT PLAUSIBLY ALLEGE FACTS TO SUPPORT THE SEVEN CLAIMS MADE IN THEIR COMPLAINT

To withstand a motion to dismiss, Plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If Plaintiff has "not nudged [its] claims across the line from conceivable to plausible," the Complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) (citing *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.,* 707 F.3d 869, 871 (7th Cir.2013)). "[G]eneral confusion 'in

3

the air' is not actionable. Rather, only confusion about 'origin, sponsorship, or approval of . . . goods" supports a trademark claim." *Fortres Grand*, 763 F.3d at 701 (citing 15 U.S.C. § 1125). "[D]ismissal of a suit for failure to state a claim is always with prejudice and so always precludes reinstatement." *Oneida Tribe of Indians of Wisconsin v. Harms*, 2005 WL 2758038, at *1 (E.D. Wisc. 2005) (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)). A plaintiff's allegations are required to show "more than a sheer possibility that a defendant has acted unlawfully" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

As noted by the Supreme Court and professor McCarthy, the language in *Twombly* should not be read to mean that a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561; *see also* 6 McCarthy on Trademarks and Unfair Competition § 32:121.60 (4th ed.). "A higher level of pleading is required: '[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct.'" McCarthy § 32.201 (citing *Twombly*, 550 U.S. at 563, n.8). "This pleading standard applies to 'all civil actions.'" *Id.* (citing *Iqbal*, 556 U.S. at 684 (internal quotation marks omitted)).

## II. PLAINTIFFS HAVE NOT AND CANNOT ADEQUATELY ALLEGE THAT SUNFROG USED ANY OF THE ASSERTED TRADEMARKS IN COMMERCE

To succeed in their trademark infringement and unfair competition claims under the Lanham Act, common law, and Wisconsin's statutes, Plaintiffs show that SunFrog *used* the asserted marks in a manner likely to cause consumer confusion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638, n.8 (7th Cir. 2001) (citing 15 U.S.C. § 1127); *see also Harley-Davidson, Inc. v. Selectra Intern. Designs, Ltd.*, 855 F.Supp. 275, 278 (E.D. Wisc. 1994), *rev'd on other*

*grounds*, 861 F.Supp. 754; *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis.2d 226, 247 (1996).

To succeed on their claim for federal trademark dilution, Plaintiffs' must adequately allege facts that support an inference that: (1) Plaintiffs' asserted trademarks are famous and distinctive; (2) the alleged dilution occurred after Plaintiffs' asserted trademarks became famous; and (3) SunFrog has *used* the asserted famous trademarks in a manner that is likely to cause dilution. 15 U.SC. § 1125(c).

As an internet service provider ("ISP"), SunFrog provides a platform on which its users may upload designs and text to create Mockups. Because it uses an innovative and entirely automated system to print items on a per order basis, SunFrog does not use any trademarks uploaded by its users in commerce. For this reason, Plaintiffs' claim for direct infringement fails. In *Selectra*, the defendant printed stickers bearing Plaintiffs' trademarks and took them to trade shows where he represented them as authentic Harley-Davidson products. Plaintiffs did not attempt to sue the convention center in that case and appropriately sued the party who selected designs that infringed upon Plaintiffs' rights, had those designs printed onto stickers, and then took those stickers to trade shows. 855 F.Supp. at 276. Here, Plaintiffs are attempting to assert liability for direct trademark infringement and dilution on the convention center. SunFrog does not select the designs that are uploaded to its website. SunFrog does not control the printing of designs that are uploaded to its website. In the same way a convention center has staff that cleans and maintains the facilities, SunFrog maintains the state of the art printers, which it makes available online through its Website for third-parties to use. Because SunFrog dos not use Plaintiff's trademarks in commerce, it cannot be directly liable for trademark

5

infringement or dilution. Plaintiffs' Complaint should be dismissed to the extent it asserts claims for direct trademark infringement, dilution, false designation of origin, and unfair competition.

**III.   SUNFROG IS PROTECTED BY THE SAFE HABOR PROVISION OF THE COPYRIGHT ACT**

The Digital Millennium Copyright Act provides a safe harbor to ISPs and states that an ISP "isn't liable for copyright infringement if it meets certain conditions, namely, if an ISP "doesn't know the material is infringing, . . . isn't aware of facts that would make the infringement apparent, upon learning such facts it acts expeditiously to remove or disable access to the infringing material, it doesn't receive a financial benefit directly attributable to the infringing activity, 17 U.S.C. § 512(d), and it terminates repeat infringers. § 512(i)(1)(A)." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012). "A person may be liable as a contributory [copyright] infringer if the product or service it sells has no (or only slightly) legal use, see *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003)," but if an ISP's services are put to lawful use by the majority of its users, it will not be held liable for copyright infringement, directly or under a theory of contributory liability, unless it has actual notice that a given user is a repeat infringer. The DMCA makes clear that an ISP's receipt of a financial benefit is only implicated where the ISP "has the right and ability to control the infringing activity." 17 U.S.C. § 512(c)(1)(B); *see Perfect 10, Inc. v. CCBill LLC*, 2007 WL 1557475, at *11 (9th Cir. 2007).

The "right and ability to control" infringing activity, as stated in the DMCA, means "something more" than the ability of an ISP to remove or block access to materials posted on its website or stored in its system. *Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082, 1093 (C.D. Cal. 2001); *see also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1183 (C.D. Cal.

6

2002). The "financial benefit" requirement presupposes some ability to limit or filter copyrighted material. *See MGM, Inc. v. Grockster*, 545 U.S. 913, 926 (2005).

Plaintiffs' recognize that SunFrog is an ISP. (Compl. ¶ 54, ECF No. 1.) Plaintiffs further recognize that all of the designs on the Website are user generated. (*Id.* ¶ 57.) Plaintiffs also recognize that when SunFrog became aware of allegedly infringing user generated designs, SunFrog removed them from its Website. (*Id.* ¶ 69.) Plaintiffs further state that to the extent designs incorporating allegedly infringing content reappeared on the Website, they were uploaded separately by other users and not by SunFrog. (*Id.* ¶ 80.) Plaintiffs' allegations do not remove SunFrog from the protections provided by the DMCA safe harbor, which allows ISPs to function and provide services to third parties. Without such protection, ISPs like SunFrog would be hobbled and consumers would lose out on a wide variety of services. Plaintiffs may have a claim for copyright infringement, but they cannot state one against SunFrog.

## IV. SUNFROG IS AN INNOCENT PRINTER AND CANNOT BE LIABLE FOR MONETARY DAMAGES

Even if this Court finds that SunFrog's services implicate it in a use of Plaintiffs' asserted marks, the Plaintiffs' remedy is limited as stated in the text of § 1114:

> [w]here an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

15 U.S.C. § 1114(2)(A). "The phrase 'innocent infringer' is not defined in the statute." *World Wrestling Federation, Inc. v. Posters, Inc.*, 2000 WL 1409831, at *2 (N.D. Ill. 2000). Congressional amendments to § 32 of the Lanham Act expanded the meaning of innocent printers and publishers and House co-sponsor stated that "innocent" in this context is intended to encompass the actual malice standards set forth in *New York Times v. Sullivan*, 376 U.S. 254

7

(1964) and its progeny. *World Wrestling*, 2000 WL 1409831, at *3 (citing 134 Cong. Rec. H10420 (daily ed. Oct. 19, 1988) (Remarks of Subcommittee Chairman Robert Kastenmeier)). The Seventh Circuit has stated that the statements of a bill's sponsor should be given "substantial weight in interpreting the statute." *In re Petition to Inspect and Copy Grand Jury Materials*, 659 F.2d 800 (7th Cir. 1981) (citation omitted). To be disqualified as an "innocent printer" then, a party must either (1) actually know that designs it is printing infringe upon the rights of others, or (2) recklessly disregard a high probability that designs it is printing infringe upon the rights of others. *See New York Times v. Sullivan*, 376 U.S. at 279.

If this Court holds that SunFrog uses trademarks in commerce by offering an online service allowing users to remotely control innovative printing machines that SunFrog maintains and checks for quality control, Plaintiffs still have not and cannot allege facts that demonstrate SunFrog printed designs comprising the asserted trademarks with knowledge that they were infringing or with a reckless disregard of a high probability that they were infringing. Plaintiffs recognize that SunFrog is a service provider. (Compl. ¶ 54, ECF No. 1.) Plaintiffs further recognize that all of the designs on the Website are user generated. (*Id.* ¶ 57.) Plaintiffs also recognize that when SunFrog became aware of allegedly infringing user generated designs, SunFrog removed them from its Website. (*Id.* ¶ 69.) Plaintiffs further state that to the extent designs incorporating allegedly infringing content reappeared on the Website, they were uploaded separately by other users and not by SunFrog. (*Id.* ¶ 80.)

Even if this Court holds that SunFrog is directly liable for the automated printers that its users remotely control, Plaintiffs have not and cannot adequately allege facts showing that SunFrog printed anything with actual knowledge that it infringed upon Plaintiffs' asserted rights or with reckless disregard for a high probability that it infringed upon Plaintiffs' rights.

8

Assuming all of the allegations in the Complaint are true and construing them in a light most favorable to Plaintiffs', the Complaint should be dismissed to the extent that it seeks monetary damages.

Wisconsin's statutory trademark protection is also designed to provide injunctive relief rather than a monetary award. *Rizzo v. South Bend Sporting Goods*, 2009 WL 2495461, *3 (W.D. Wisc. 2009). "Damages are available only if the 'person, association or union' described in § 132.033(1) shows damages in the context of the injunctive suit." *Id.* (citing Wis. Stat. § 132.033(2)(b)).

SunFrog is not a flea market stand or similarly small shop that requires human interaction to print items when they are ordered from its users' Mockups. It is closer to a vending machine setup at a kiosk at a shopping mall that allows users to upload images from a flash drive and print them on t-shirts. While such a machine would be serviced by a person from time to time, the owner of the machine would not be liable for direct infringement if its users uploaded and printed infringing designs.

## **CONCLUSION**

For the foregoing reasons, SunFrog respectfully requests that this Court grant its motion to dismiss Plaintiffs' Complaint as to its First, Second, Third, Fourth, Sixth, and Seventh claims insofar as they assert direct liability predicated on SunFrog's use of the asserted trademarks. SunFrog respectfully asks that Plaintiffs' Fifth claim for relief in their Complaint be dismissed entirely. Finally, SunFrog respectfully asks that Plaintiffs' Complaint be dismissed insofar as it seeks monetary damages.

Dated: July 21, 2017                    Respectfully submitted,

                                        s/Aaron T. Olejniczak
                                        Aaron T. Olejniczak (#1034997)
                                        aarono@andruslaw.com
                                        Christopher R. Liro (#1089843)
                                        chris.liro@andruslaw.com
                                        ANDRUS INTELLECTUAL PROPERTY LAW, LLP
                                        100 East Wisconsin Avenue, Suite 1100
                                        Milwaukee, WI 53202
                                        Telephone: (414) 271-7590
                                        Facsimile: (414) 271-5770

                                        Eric Misterovich
                                        eric@revisionlegal.com
                                        John Di Giacomo
                                        john@revisionlegal.com
                                        REVISION LEGAL, PLLC
                                        8051 Moorsbridge Road
                                        Portage, MI 49024
                                        Phone: (269) 281-3908

                                        *Attorneys for Defendant SunFrog, LLC*