# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,

          Plaintiffs,

v.

SUNFROG, LLC d/b/a SUNFROG SHIRTS and JOHN DOES,

          Defendants.

Case No. 17-CV-711-JPS

**ORDER**

      This is a trademark infringement case brought by Plaintiffs, collectively referred to as "Harley-Davidson," against Defendants, collectively referred to as "SunFrog." SunFrog runs a website where third-party sellers can upload designs and logos onto clothing, hats, mugs, or other items and sell them. SunFrog handles printing the goods and selling them, and it takes the majority of the profits from the sales. Harley-Davidson noticed that SunFrog sold many items bearing its trademarks, including both word-marks and logos, and it filed this lawsuit as a result. Before the Court is Harley-Davidson's motion for preliminary injunction. For the reasons stated below, it will largely be granted.

      To obtain a preliminary injunction, a plaintiff must show that (1) it will suffer irreparable harm in the period before final resolution of its claims; (2) traditional legal remedies are inadequate; and (3) the claim has some likelihood of success on the merits. *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the court

determines that the plaintiff has failed to demonstrate any one of these three threshold requirements, it must deny the injunction. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

If the plaintiff makes these preliminary showings, the court then assesses the balance of harms and where the public interest lies. *Jones*, 842 F.3d at 1058; *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012). In so doing, the court employs a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984); *Abbott Labs.*, 971 F.2d at 12. Overarching this entire analysis, the court must be mindful that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

SunFrog does not meaningfully challenge Harley-Davidson's *prima facie* showing of a right to a preliminary injunction. Because SunFrog sells numerous products bearing marks identical to or materially indistinguishable from Harley-Davidson's registered (and largely incontestable) marks, Harley-Davidson has established a likelihood that consumers, viewing SunFrog's products in the marketplace, would be confused as to their source, affiliation, or sponsorship. *See Ty, Inc. v. Jones Grps., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001) (likelihood-of-confusion factors); *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 WL 2402922, at *4 (N.D. Ind. May 31, 2013) (collecting cases holding that in counterfeit cases, a likelihood of confusion can be presumed). Harley-Davidson thus enjoys a greater-than-negligible chance of success on its claims, which is all that is

required to support the issuance of a preliminary injunction. *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016).

Additionally, it is well-settled that courts presume irreparable harm to the plaintiff where there are violations of the Lanham Act. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Likewise, injuries to a company's goodwill or reputation, such as are caused by trademark infringement, are not susceptible to precise valuation. Thus, a showing of infringement is generally sufficient to establish that remedies at law are inadequate. *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997); *Abbott Labs.*, 971 F.2d at 16.

Finally, the balance of harms tips in Harley-Davidson's favor. Harley-Davidson presents a fairly straightforward case of counterfeiting against an online marketplace. Stopping this conduct will serve both to protect Harley-Davidson's interest in its consumer goodwill and vindicate the public's interest in avoiding deception as to the source or sponsorship of the goods they purchase. *Promatek*, 300 F.3d at 813–14. Thus, Harley-Davidson has demonstrated that a preliminary injunction is warranted in this case.[1]

---

[1]Two weeks after Harley-Davidson's motion became ripe for decision, SunFrog filed a separate motion to dismiss the complaint. (Docket #27). In the motion to dismiss, SunFrog raises two arguments relevant to the disposition of instant matter, neither of which has any merit.

First, SunFrog claims that, as a mere printer of goods bearing Harley-Davidson's marks, it has not used Harley-Davidson's marks in commerce as required to sustain a claim under federal or Wisconsin law. (Docket #28 at 8–9). It cites no case so holding. Instead, SunFrog cites a single case in which Harley-Davidson chose not to sue a printer of infringing goods and implies that such a claim must not be available under the Lanham Act. *See id.* (citing *Harley-Davidson, Inc. v. Selectra Int'l Designs, Ltd.*, 855 F. Supp. 275, 278 (E.D. Wis. 1994)).

SunFrog's response is that Harley-Davidson's requested relief is either moot or unavailable to it. In its motion, Harley-Davidson requests an order from the Court enjoining SunFrog from:

> (1) using or displaying Harley-Davidson's marks on its website, advertising materials, or products;

> (2) using or displaying any uniform resource locator ("URL") that directs to a page for an infringing product, to an image of an infringing product, or that contain a sales-tracking element related to infringing products, whether or not any of these URLs themselves contain one of Harley-Davidson's marks;

---

The Court does not agree, and its reasoning ties into SunFrog's second argument: that it cannot be liable for monetary damages because it is an "innocent infringer" as provided in 15 U.S.C. § 1114(2)(A). (Docket #28 at 11–13). That section states:

> Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

15 U.S.C. § 1114(2)(A). As can be seen, this section expressly contemplates that injunctive relief is available to prevent future printing of infringing goods, meaning that Congress intended that an infringement action could lie directly against a printer. Indeed, because this section is a defense to monetary damages only, the inescapable conclusion is that even an innocent printer of infringing goods may be liable for infringement and can be enjoined from future infringement. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 n.7 (5th Cir. 2012); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999); *Barrios v. Am. Thermal Instruments, Inc.*, 712 F. Supp. 611, 620 (S.D. Ohio 1988); *Gianni Versace SPA v. Awada*, Case No. CV 03-3254 GPS(RNBx), 2008 WL 11338774, at *1 (C.D. Cal. Mar. 25, 2008). Thus, without commenting on the merits of this contention as a defense against monetary damages, the Court finds that SunFrog's arguments in its motion to dismiss do not preclude the issuance of preliminary injunctive relief.

>    (3) fulfilling any orders for infringing products, including after SunFrog has deactivated the page for such a product in response to a takedown request;
>
>    (4) using its marks in SunFrog's business names, domain names, URLs, or other identifiers, from suggesting that SunFrog's products or services are associated with Harley-Davidson;
>
>    (5) allowing its sellers that have previously sold infringing products from selling infringing products in the future; and
>
>    (6) assisting any other person or entity in engaging in any of the above-described proscribed conduct.

*See* (Docket #7). Harley-Davidson further requests that the Court order SunFrog to file a report regarding its compliance with the injunction. *Id.* at 5.

First, SunFrog argues that it has implemented certain procedures to (1) detect infringing products, images, and other uses of Harley-Davidson's marks and remove them, (2) provide Harley-Davidson access to SunFrog's database to perform its own searches for infringing uses, and (3) disgorge to Harley-Davidson any profits derived from sale of infringing products once identified. *See* (Docket #16-4) (declaration of SunFrog general counsel describing steps taken to abate infringement). According to SunFrog, these procedures moot Harley-Davidson's requests for injunctive relief (a) to prohibit any further use or display of the Harley-Davidson trademarks on SunFrog's website; (b) to prohibit any further use or display of any images containing the Harley-Davidson trademarks on SunFrog's website; (c) to prohibit SunFrog from selling any items containing the Harley-Davidson trademarks after they have been removed from the website; and (d) to prohibit any users previously identified by Harley-Davidson as selling

infringing designs from further selling infringing designs through the website. (Docket #16 at 6).

Harley-Davidson disagrees. In its view, while SunFrog's new procedures may have abated some ongoing infringement, its request for complete relief from infringement remains unsatisfied. Harley-Davidson has submitted evidence that even after SunFrog filed its brief in opposition to the motion for preliminary injunction (and even as of the day of the Court's Rule 16 scheduling conference a month later), most of the infringing products Harley-Davidson identified initially were still advertised on SunFrog's website and available for sale. *See* (Docket #21, #25). Further, according to Harley-Davidson, SunFrog still permits known infringing users to continue to operate and still allows sellers to draw infringing designs from SunFrog's database to create new infringing products. (Docket #21 at 9–13). Thus, Harley-Davidson complains that SunFrog's present efforts have fallen well short of satisfying its claims for relief.

The Court concurs and finds that Harley-Davison's requested relief is not mooted by SunFrog's recently implemented procedures. SunFrog faces a high hurdle to convince the Court that the claims for injunctive relief are moot. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A defendant claiming voluntary compliance with the plaintiff's demands "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."). Harley-Davidson's

evidence shows that despite SunFrog's efforts, there remain ongoing acts of infringement that SunFrog's enforcement apparatus has not been able to control. As a result, the Court cannot find that SunFrog's conduct has rendered moot Harley-Davidson's requests for injunctive relief.[2]

SunFrog's other argument is that some elements of the proposed injunction are overbroad. First, as to Harley-Davidson's requests concerning URLs, SunFrog asserts that URLs which lead to infringing products but which do not contain any of Harley-Davidson's marks do not cause confusion as to source or sponsorship. *See* (Docket #16 at 7–10). On the present record, the Court agrees. On its face, a URL not containing Harley-Davidson's marks does not use any such mark in commerce or draw upon Harley-Davidson's reputation or goodwill, regardless of where the URL leads. *See* 15 U.S.C. § 1127 (a trademark is deemed to be used in commerce only "when it is used or displayed in the sale or advertising of services"). Harley-Davidson's problem is with the destination, not the URL, and in the absence of authority to the contrary, it cannot challenge the URL in this instance.[3]

---

[2]On July 28, 2017, just prior to the issuance of this decision, SunFrog filed a status report regarding its continued and intensifying enforcement efforts. (Docket #32). The matters detailed in the report do not affect the Court's decision herein. Nor would it be proper to permit the parties to endlessly re-brief the issue of mootness as SunFrog's enforcement efforts evolve.

[3]The Court credits SunFrog's assertion, which Harley-Davidson does not dispute, that once an infringing image or product is removed from its website, a URL linking to that page redirects the user to the general category of goods in which the page was found, not to any other infringing product or image. *See* (Docket #16 at 7–8). Thus, once SunFrog removes the underlying infringing product or image, the URL linking to it becomes benign with respect to Harley-Davidson's marks.

The result is different, however, with respect to URLs which incorporate Harley-Davidson's marks in their post-domain paths.[4] SunFrog argues that such use is not actionable infringement as a matter of law. (Docket #16 at 7–10). The only Circuit-level authority in this area comes from the Sixth Circuit's decision in *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 696–97 (6th Cir. 2003), which held that unlike a website domain name, which consumers typically view as a signifier of source, post-domain paths "merely sho[w] how the website's data is organized within the host computer's files." As such, post-domain paths generally do not signify source for consumers and, consequently, do not cause consumer confusion. *Id.*; *see also Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C96–2703, 1997 WL 811770, at *4 n.6 (N.D. Cal. Dec. 18, 1997).

The Seventh Circuit has not opined on this topic, and there appear to be no courts that have disagreed with *Interactive Products*. Nevertheless,

---

[4]As a judge of the Southern District of Florida has explained:

> Every "website has a corresponding domain name, which is an identifier somewhat analogous to a telephone number or street address." *Interactive Products Corp.*, 326 F.3d at 691. "Domain names consist of a second-level domain-simply a term or series of terms. . .followed by a top-level domain. . . ." *Id.* (providing examples of common top-level domains such as ".com" (commercial), ".edu" (educational), and ".gov" (government)). For example, in www.diamondbrite.com "diamondbrite" is the second-level domain, while ".com" is the top-level domain. Anything after the top-level domain is known as the post-domain path, for example in www.diamondbrite.com/federalcourts, "federalcourts" is the post-domain path. *See id.*

*S. Grouts & Mortars, Inc. v. 3M Co.*, CASE NO. 07-61388-CIV COOKE/BROWN, 2008 WL 11333151, at *3 n.4 (S.D. Fla. Apr. 29, 2008).

the Court finds this case to be distinguishable. In *Interactive Products* and *Patmont*, the accused infringers only used the marks to identify or comment upon genuine, not counterfeit, products, and the use of the marks was not intended to generate confusion as to source.

Here, Harley-Davidson has proffered evidence that SunFrog encourages its sellers to share links to counterfeit products on social media websites. One such link (that has since been removed) was, for instance, "https://www.sunfrog.com/Automotive/HD-Forever.html." (Docket #21 at 15); (Docket #11 at 6). The purpose of including Harley-Davidson's marks in post-domain paths like this one seems to be to persuade the consumer that if they follow the link, they will find a genuine Harley-Davidson product. Of course, the goods SunFrog sells are undoubtedly not genuine, so unlike the defendant in *Patmont*, SunFrog cannot complain that it needs to use Harley-Davidson's marks merely for descriptive purposes. *See Patmont*, 1997 WL 811770, at *4. To the contrary, in the Court's view, SunFrog's use of Harley-Davidson's marks goes beyond the mere internal organization of its computer files. *Id.* at 4 n.6.

Using Harley-Davidson's marks in this way appears closely related to the use of marks in metatags, the situation faced by the Seventh Circuit in *Promatek*, 300 F.3d at 812–13. Put simply, a metatag is a word describing a webpage that will cause the page to appear in a search for that word. *Id.* at 810 n.1. The defendant had used the plaintiff's mark as a metatag for its website, and the Court of Appeals found that this generated actionable initial-interest confusion. *Id.* at 812–13. The court reasoned that the defendant improperly benefitted from the goodwill plaintiff had developed in its mark by using the mark to steer customers to the defendant's website. *Id.* Even if customers ultimately realized that the website they were on was

not the sponsored by or affiliated with the mark holder, they would be inclined to stay on the defendant's website and buy its products out of convenience. *Id.* As the Seventh Circuit explained, "[c]onsumers who are directed to [defendant's] webpage are likely to learn more about [defendant] and its products before beginning a new search for [plaintiff] and [its mark]." *Id.* at 813.

The same logic applies here, as it appears that consumers would likely experience initial-interest confusion upon seeing a SunFrog URL containing Harley-Davidson's marks, wherever they may be located within the URL. Those consumers would then be more likely to browse SunFrog's offerings regardless of whether they realized that the products were not genuine Harley-Davidson goods. Thus, the Court is not convinced that *Interactive Products* controls the outcome here, and it will not limit the relief sought based on the location of a mark within a URL.

Finally, SunFrog asserts that some paragraphs in the proposed injunction are merely admonitions to comply with the law. While SunFrog is correct that such admonitions are not permitted, *EEOC v. Autozone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013), none of Harley-Davidson's requests fit that mold. Instead, Harley-Davidson's proposed order directs SunFrog to stop doing specific, identifiable things. Injunctions struck down on this ground typically include provisions enjoining the defendant from "violating any of [the plaintiff's] rights in the trademark" or "engaging in unfair competition with [the plaintiff] through their use of the trademark." *See, e.g., Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 & n.10 (2d Cir. 1994); *AutoZone*, 707 F.3d at 841 (striking injunction that regurgitated the ADA's accommodation requirement while inserting the defendant's name). Injunctions of this sort require a good deal of guesswork on the defendant's part to determine what

not to do—on pain of contempt—which is inconsistent with due-process principles. *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 415 (7th Cir. 2008).

The injunction here contains no such open-ended language. Rather, its provisions connect specified conduct with the use of Harley-Davidson's marks. *See* Fed. R. Civ. P. 65(d)(1) (an injunction must "state its terms specifically[ ] and. . .describe in reasonable detail. . .the act or acts restrained or required"). It is, moreover, only a preliminary injunction, reviewable at any time throughout the life of this case, which the Court has scheduled to conclude by May 2018. *See* (Docket #26); *E.E.O.C. v. N. Star Hospitality*, No. 12–cv–214–BBC, 2014 WL 282026, at *5 (W.D. Wis. Jan. 27, 2014) (approving time-limited injunction that was "narrowly framed and tied to the particular unlawful conduct" at issue). SunFrog offers only a perfunctory, two-paragraph suggestion that the injunction is vague, and the Court does not share that view. The proposed provisions are sufficiently specific to survive SunFrog's challenge.[5]

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for preliminary injunction (Docket #5) be and the same is hereby **GRANTED IN PART** and **DENIED IN PART** as stated herein;

**IT IS FURTHER ORDERED** that Defendant's motions to restrict certain exhibits and the July 28, 2017 status report filed in connection with its opposition to Plaintiffs' motion (Docket #15, #31) be and the same are hereby **GRANTED**; and

---

[5]Nevertheless, after review of Harley-Davidson's proposed order, and in light of the rulings made above, the Court has revised the proposed injunction to eliminate duplicative or impermissible portions.

**IT IS FURTHER ORDERED** that Defendant SunFrog, LLC d/b/a SunFrog Shirts ("SunFrog") and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, wholesalers, manufacturers, vendors (including without limitation ISPs, printers, and order fulfillment and shipping vendors), successors, assigns, sellers of products on any and all websites and social media pages owned, operated, or controlled by SunFrog (collectively, "SunFrog's Websites"), and all other persons in active concert or participation with any of them (collectively, "Enjoined Parties"), are hereby enjoined and restrained, pending final disposition of this action:

1. From making any unauthorized use or display of Harley-Davidson's HARLEY-DAVIDSON, HARLEY, H-D, HD, FAT BOY, and SPORTSTER word marks and Harley Davidson's Bar & Shield logo, Willie G. Skull logo, and Number 1 logo trademarks shown below, and any confusingly similar marks, names, or logos, alone or in connection with other wording, designs, and/or content and any other trademarks of Harley-Davidson or confusingly similar marks (collectively, "the H-D Marks") in any form, manner, or medium including, but not limited to: (a) on any products of any type, including without limitation shirts, sweatshirts, hoodies, leggings and any other apparel, headwear and footwear products, mugs and other beverage ware products, posters, and prints; or (b) on any designs to be applied to products, including without limitation all artwork, transparencies, negatives, dies, tooling, molds, screens, disks, and other materials; and (c) on any packaging, containers, tags, labels, product inserts, order documents, shipping documents, and invoices associated or used with any of the items in subparts (a) and (b)

above (the items in subparts (a)-(c) are collectively referred to the "Infringing Products");

| "Bar & Shield Logo" | "Willie G. Skull Logo" | "Number 1 Logo" |
|---|---|---|
| | | |

2. From using or displaying in any form or manner any images or pictures of the Infringing Products including, but not limited to, use and display in any advertising, marketing, and promotional materials, on SunFrog's Websites, on any other online or offline venue used to display, advertise, market, or promote the Infringing Products;

3. From fulfilling any orders for any Infringing Products at any time, including without limitation after SunFrog has "deactivated" an Infringing Product in response to a takedown complaint submitted by Harley-Davidson;

4. From making any unauthorized use or display of the H-D Marks and any other trademarks of Harley-Davidson or confusingly similar marks in any form, manner, or medium in any advertising, promotional, or marketing of the Infringing Products or other products or services, including on SunFrog's Websites, on or in any advertisements, promotional materials, advertising materials, catalogs, brochures, flyers, coupons, giveaway items, third-party websites, social media sites, store names, names of sellers on SunFrog's Websites, and signage;

5. From using the H-D Marks as or as part of any trademarks, business names, corporate names, store names, domain names, e-mail

addresses, URLs, metatags, metadata, screen names, social media names, keywords, or any other names or identifiers;

6.  From representing by any means whatsoever, directly or indirectly, that SunFrog or any products or services offered by SunFrog or the Enjoined Parties, including without limitation the Infringing Products, or any activities undertaken by SunFrog or the Enjoined Parties, emanate from Harley-Davidson, or are authorized, connected, licensed, or otherwise affiliated with or sponsored or endorsed by Harley-Davidson;

7.  From allowing any sellers on SunFrog's Websites that have created, advertised, marketed, promoted, offered to sell, or sold Infringing Products identified in Harley-Davidson's takedown complaints submitted to SunFrog prior to the date of this Order to create, advertise, market, promote, offer to sell, or sell in the future any Infringing Products on SunFrog's Websites; and

8.  From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (1)–(7) above.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2017.

BY THE COURT:

*[signature]*

J. P. Stadtmueller
U.S. District Judge