IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, | Case No. 2:17-cv-00711 |
| Plaintiffs, | |
| vs. | **JURY TRIAL REQUESTED** |
| SUNFROG, LLC d/b/a SUNFROG SHIRTS and JOHN DOES, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiffs H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC (collectively, "H-D") submit this Memorandum in opposition to Defendant SunFrog, LLC's d/b/a SunFrog Shirts ("SunFrog") Motion to Dismiss H-D's Complaint ("SunFrog's Motion"). (Dkt. 27-28.)

**I.     INTRODUCTION**

SunFrog's Motion asserts four grounds for dismissing H-D's Complaint under Fed. R. Civ. P. 12(b)(6). Initially, SunFrog provides several pages of alleged background "facts" regarding its business without citations to the existing record or new declarations. Not only are these "facts" lacking any support, it is unclear how SunFrog's allegations about its own business are relevant to the sufficiency of H-D's allegations in its Complaint for purpose of SunFrog's Motion.

1

Turning to SunFrog's arguments, its first argument, consisting of two paragraphs, is simply that H-D "[has] not and cannot plausibly allege facts to support the seven claims made in their complaint." SunFrog's two paragraphs consist almost exclusively of legal citations to several cases and a treatise for general legal propositions. Nowhere in these two paragraphs does SunFrog identify any specific allegations of H-D's Complaint that are defective. Nor does SunFrog assert that H-D failed to plead any of the elements required for its seven claims. In any event, H-D shows below that it has sufficiently pleaded all of its claims.

SunFrog's next argument is that it has not used the H-D Marks[1] in commerce. Not only does H-D's Complaint clearly allege that SunFrog has used the H-D Marks in commerce, there is no question that SunFrog's licensing, displaying, selling, printing, and shipping of the Infringing Products, and processing of customer payments for Infringing Products, constitute use of the H-D Marks in commerce. Indeed, in its decision granting in part H-D's Motion for Preliminary Injunction, this Court noted that SunFrog's argument had no "merit."

SunFrog's other two arguments—Safe Harbor under the Copyright Act and the Innocent Infringer provision of the Lanham Act—are both affirmative defenses and not appropriate grounds for a 12(b)(6) motion. Even if these arguments were appropriate at this stage, it is obvious that SunFrog can not establish either defense. SunFrog is not eligible for DMCA protection because it does not meet the threshold requirements to be considered a "service provider" and, even if it did, H-D has pleaded facts that negate this defense, including: (1) SunFrog has the right and ability to control the infringing activity on SunFrog's Website; (2) SunFrog receives a financial benefit directly attributable to the infringing activity; and (3) SunFrog had actual knowledge of the Infringing Products, did not expeditiously remove them,

---

[1] For purposes of this Memorandum, the capitalized terms "H-D Marks," "Infringing Products," and "SunFrog's Website" have the same meanings as they do in H-D's Complaint (Dkt. 1 ¶ 1-3).

and in fact allowed many of the same products to be again advertised and sold on SunFrog's Website. Regarding the Innocent Printer defense, it is obvious that SunFrog could not establish this defense at any stage of this case based on undisputable facts, but for purposes of the present motion the following allegations of H-D's Complaint negate both elements of SunFrog's defense: (1) SunFrog is not "engaged solely within the business of printing the mark or violating matter for others" because it also operates an online marketplace advertising the Infringing Products, it facilitates their sales, it processes the payments, and it ships the products to customers; and (2) SunFrog is not "innocent" but rather has acted knowingly and willfully.

## II.     PROCEDURAL BACKGROUND

H-D filed its Complaint on May 19, 2017 (the "Complaint" or "H-D's Complaint"). (Dkt. 1.) H-D filed a Motion for Preliminary Injunction and supporting papers on May 30, 2017 (Dkt. 5-12), which this Court granted in part on July 31, 2017 (Dkt. 33).

SunFrog filed a motion for extension of time to answer the Complaint on June 21, 2017 (Dkt. 14), which the Court granted by text order and gave SunFrog until July 21, 2017 to respond to the Complaint. On July 21, 2017, SunFrog filed its Motion to Dismiss and supporting Memorandum ("SunFrog's Motion"). (Dkt. 27-28.)

## III.    ARGUMENT

### A.    Legal Standard for Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

3

A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-80, 684 (2009) (extending *Twombly* from antitrust to litigation generally and stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The burden is on the defendant to prove that no legally cognizable claim for relief exists. 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.).

      **B.    SunFrog Has Failed to Carry its Burden, and H-D Has Properly Pleaded Facts To Support All Of Its Claims**

In Section I of SunFrog's Motion, SunFrog contends that H-D "[has] not and cannot plausibly allege facts to support the seven claims made in their complaint." (Dkt. 28, p. 3.) H-D asserted seven causes of action in the Complaint: (1) trademark counterfeiting under 15 U.S.C. § 1114(1) (Dkt. 1, Claim 1 ¶¶ 92-100), (2) trademark infringement under 15 U.S.C. § 1114(1) (*Id.*, Claim 2 ¶¶ 101-106), (3) trademark infringement, false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A) (*Id.*, Claim 3 ¶¶ 107-112), (4) trademark dilution under 15 U.S.C. § 1125(c) (*Id.*, Claim 4 ¶¶ 113-120), (5) Copyright infringement 17 U.S.C. § 101, et seq. (*Id.*, Claim 5 ¶¶ 121-129), (6) trademark infringement under Wis. Stat. § 132 et seq. (*Id.*, Claim 6 ¶¶ 130-136), and (7) common law trademark infringement, unfair competition, and misappropriation (*Id.*, Claim 7 ¶¶ 137-142).

SunFrog's argument that H-D has not and cannot allege facts to plausibly support its claims consists of only two paragraphs. (Dkt. 28, pp. 3-4.) Nowhere in these two paragraphs,

4

however, does SunFrog identify any specific allegations of H-D's Complaint that are defective. Nor does SunFrog identify any requisite elements of any of H-D's seven claims that are missing from the Complaint. Rather, SunFrog's two paragraphs consist only of string cites to various cases and a treatise for general propositions regarding motions to dismiss.

SunFrog thus has not carried its burden of proving that no legally cognizable claim for relief exists, i.e., SunFrog has not shown for any of H-D's seven claims that H-D failed to assert "enough facts to state a claim for relief that is plausible on its face," or that H-D failed to "plead[] factual content that allows the court to draw the reasonable inference that [SunFrog] is liable for the misconduct alleged." Nevertheless, for the sake of completeness, H-D demonstrates below that when construing the factual allegations set forth in the Complaint (Dkt. 1) in the light most favorable to H-D, H-D appropriately states a claim for all seven causes of action.

### 1. H-D States a Plausible Claim for Counterfeiting (Claim 1)

Although SunFrog moved to dismiss H-D's trademark counterfeiting claim (Claim 1), SunFrog does not specifically address it in its Motion. (Dkt. 28.) SunFrog does not argue that H-D failed to sufficiently allege any of the required elements nor does it dispute the Infringing Products display counterfeits of the H-D Marks. Nevertheless, as shown below, H-D has sufficiently stated a trademark counterfeiting claim.

To prove counterfeiting under the Lanham Act, a plaintiff must show that: (1) the mark is counterfeit, i.e., a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark," 15 U.S.C. § 1127, 15 U.S.C. § 1116(d)(1)(B); (2) the mark must be registered on the U.S. Patent and Trademark Office's principal register for the same goods or services for which the defendants use the mark, 15 U.S.C. § 1116(d)(1)(B); (3) the defendants must not have

been authorized to use the mark at the time the goods or services were manufactured or produced, *id*.; and (4) the defendant must have acted with knowledge and intent, 15 U.S.C. § 1117(b). *Coach, Inc. v. Chaos of Muncie,* No. 1:11-CV-0505-JMS-DML, 2012 WL 896420, at *3 (S.D. Ind. Mar. 15, 2012).

H-D's Complaint sufficiently states a claim for trademark counterfeiting because it alleges: (1) SunFrog used marks identical to the H-D Marks (Dkt. 1 ¶¶ 3-4, 65, 69, 94, 95); (2) the H-D Marks are federally registered on the Principal Register for the goods sold by SunFrog (*Id*. ¶¶ 42-50, 93); (3) SunFrog was not authorized by H-D to use any of the H-D Marks at the time the Infringing Products were made (*Id*. ¶¶ 9, 94-95); and (4) SunFrog acted with knowledge and intent (*Id*. ¶¶ 1, 69, 75-76, 82, 91, 98).

### 2. H-D States a Plausible Claim for Trademark Infringement and Unfair Competition under Sections 32(1) and 43(a) of the Lanham Act, Wisconsin State Law, and Common Law (Claims 2, 3, 6, 7)

To prove trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, a plaintiff must establish that (1) its mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A); *Eli Lilly & Co. v. Nat. Answers, Inc*., 233 F.3d 456, 461 (7th Cir. 2000). Claims for trademark infringement and unfair competition under state law are also governed by the same likelihood-of-confusion test. *See Nat'l Football League Properties, Inc. v. ProStyle, Inc.*, 16 F. Supp. 2d 1012, 1014-15 (E.D. Wis. 1998). Further, claims for trademark infringement are identical under statutory and common law, *Foamation, Inc. v. Wedeward Enterprises, Inc*., 970 F. Supp. 676, 689 (E.D. Wis. 1997), as are claims for unfair competition, *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989); *Thermal Design, Inc. v. Am. Soc'y of Heating Refrigerating & Air-Conditioning Engineers, Inc.,* No. 07-

C-765, 2008 WL 1902010, at *8 (E.D. Wis. Apr. 25, 2008).

H-D's Complaint sufficiently states claims for trademark infringement and unfair competition because it alleges (1) the H-D Marks are protectable (Dkt. 1 ¶¶ 16-27, 42-51, 93), and (2) SunFrog's use of the H-D Marks is likely to cause confusion among consumers (*Id.* ¶¶ 3-4, 65, 67, 76-78, 86-87, 94-96, 102, 108, 131, 138).

### 3. H-D States a Plausible Claim for Trademark Dilution (Claim 4)

To prove trademark dilution under the Lanham Act, a plaintiff must show that: (1) its mark is famous; (2) defendant adopted its mark after the plaintiff's mark became famous; (3) defendant's use of the plaintiff's mark is commercial and in commerce; and (4) the alleged infringement is likely to cause dilution regardless of the presence or absence of actual or likely confusion, of competition, or of any actual economic injury. *See* 15 U.S.C. § 1125(c). Trademark dilution can take two forms—blurring and tarnishing. "Dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. 15 U.S.C. § 1125(c)(2)(B). "Dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark. 15 U.S.C. § 1125(c)(2)(C).

H-D's Complaint sufficiently states a claim for trademark dilution because it alleges (1) the H-D Marks are famous (Dkt. 1 ¶¶ 5, 31, 39-41, 88, 114-115); (2) SunFrog used the H-D Marks after the H-D Marks became famous (*Id.* ¶¶ 65, 116); (3) SunFrog's use of the H-D Marks is commercial and in commerce (*Id.* ¶¶ 2-3, 54-55, 65-67, 78, 84); and (4) SunFrog's actions are likely to cause dilution by both blurring and by tarnishment (*Id.* ¶¶ 86, 88, 116 ).

### 4. H-D States a Plausible Claim for Copyright Infringement (Claim 5)

7

To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 681 (2017) (citing *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012)). H-D's Complaint sufficiently states a claim for copyright infringement because it alleges (1) ownership of a valid copyright registration for the Willie G. Skull Logo (Dkt. 1 ¶¶ 52-53, 122-124), and (2) SunFrog copied H-D's original work without authority (*Id*. ¶¶ 9, 89, 125-129).

### C. H-D Alleges that SunFrog Used the H-D Marks in Commerce and, In Any Event, SunFrog's Use of the H-D Marks in Commerce is Irrefutable

In Section II of SunFrog's Motion, SunFrog argues that it "dos[sic] not use [H-D's] trademarks in commerce, [so] it cannot be directly liable for trademark infringement or dilution" and that H-D cannot adequately allege its "infringement and unfair competition claims under the Lanham Act, common law, and Wisconsin's statutes." (Dkt 28, pp. 4-6.)

The Lanham Act defines "use in commerce" as:

"the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce"

15 U.S.C. § 1127. The Supreme Court has held that the term "use in commerce" should be construed broadly "[i]n the light of the broad jurisdictional grant in the Lanham Act." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952); *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d

8

707, 713 (N.D. Ill. 2014); *see also Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 812 (7th Cir. 1973) (noting that *Steele* "upheld a broad concept of 'commerce'").

H-D's Complaint specifically alleges that SunFrog used the H-D Marks in commerce, (Dkt. 1 ¶¶ 94, 95, 102), which alone is enough to defeat SunFrog's Motion to Dismiss. Indeed, H-D alleges such use in commerce in detail, including how SunFrog affixes the H-D Mark to the Infringing Products, and how SunFrog has marketed, promoted, advertised, printed, shipped, and sold Infringing Products in commerce. (*Id*. ¶¶ 2-3, 54-85, 94, 95, 102.)

The *Selectra* decision SunFrog cites provides no factual or legal support for its position that SunFrog does not use the H-D Marks in commerce. *See* Dkt. 28, p. 5 (citing *Harley-Davidson, Inc. v. Selectra Int'l Designs, Ltd.*, 855 F. Supp. 275 (E.D. Wis. 1994), *opinion vacated in part on reconsideration*, 861 F. Supp. 754 (E.D. Wis. 1994)). As this Court noted in its decision granting in part H-D's Motion for Preliminary Injunction, SunFrog's argument that it did not use the H-D Marks in commerce has no "merit." (Dkt 33, n.1.) Specifically, the Court stated that SunFrog cited "no case so holding [in support of its argument]," thus dismissing SunFrog's reliance on *Selectra*. (*Id*.)

SunFrog's claim that it is like the "convention center" in *Selectra* is without merit. (Dkt. 28, p. 5.) In *Selectra*, the defendant sold stickers bearing H-D's trademarks and sold them in booths at trade shows, 855 F. Supp. at 276, which SunFrog characterizes as the "convention center." SunFrog argues that because H-D did not sue the convention center in that decades-old case, SunFrog is somehow not liable here. (Dkt. 28, p. 5.) Initially, whether or not H-D sued the convention center in the *Selectra* case in 1993, before the internet even became popular, is not an admission or evidence that SunFrog is not an appropriate party in 2017 in this case addressing

9

online infringement and counterfeiting.[2] In any event, unlike the convention center in *Selectra*, which did *not* license, sell, advertise, print, or ship the infringing stickers, SunFrog engages here in all of these activities with respect to the Infringing Products. (Complaint ¶¶ 2-3.)

The gist of SunFrog's "use in commerce" argument—that others designed the Infringing Products—was rejected by a district court in a recent case involving another shirt printing company. *See Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 916-18 (S.D. Ohio 2014). There, the court granted summary judgment to the trademark owner and held that that the shirt printer was directly liable for trademark infringement under 15 U.S.C. § 1114, unfair competition and passing off under 15 U.S.C. § 1125(a), and counterfeiting under 15 U.S.C. § 1114, among other claims. *Id.* at 915. Like SunFrog, the defendant in *Ohio State Univ.* argued that "they are insulated from liability because the designs do not originate with them . . . but instead come to them via third parties, and it is difficult to police the many designs uploaded on a daily basis. These third parties are asked not to place infringing content on the website." *Id.* at 917. Rejecting that argument, the court stated:

> "this directive and the fact that some designs are periodically kept off or removed from the website do not insulate Defendants from liability. Selling knockoffs is selling knockoffs, regardless of who suggested you sell them, regardless of how many other infringing products you decide not to sell, and regardless of how much of a hassle it is to comply with the law. Because there is no exception in trademark law for infringers who take an ostrich approach to policing their business activities and complying with the law, no reasonable jury could accept Defendants' "it's too hard/we are the actual victims " argument. The argument only attempts to sidestep the issue at the heart of this litigation: regardless of whatever steps taken to avoid infringement, did Defendants infringe on Plaintiff's trademarks?"

*Id*. The same is true here—SunFrog is liable even if the designs do not originate with SunFrog.[3]

---

[2] The *Selectra* Complaint was filed on March 25, 1993, more than 24 years ago. (*Harley-Davidson, Inc. v. Selectra Int'l Designs, Ltd.*, No. 2:93-cv-00302-JWR, Dkt 1.)
[3] H-D also pleaded secondary liability for its claims of trademark counterfeiting (Dkt. 1 ¶ 97), trademark infringement (*Id*. ¶ 103), unfair competition (*Id*. ¶ 109), trademark dilution (*Id*. ¶ 117),

### D. SunFrog Is Not Protected By The Safe Harbor Provision of the Copyright Act

In Section III of SunFrog's Motion, SunFrog claims it is protected by the Safe Harbor Provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(d). (Dkt. 28, p. 6.) As shown below, however, SunFrog is not protected by the DMCA.

Initially, consideration of affirmative defenses such as SunFrog's DMCA defense are not appropriate on a motion to dismiss. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (explaining that existence of meritorious affirmative defense does not equate to failure to state a claim upon which relief may be granted); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under 12(b)(6)"); *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F. Supp. 2d 974, 985 (N.D. Ill. 2003) ("Defendants can bring a motion to dismiss on the basis of an affirmative defense only if that affirmative defense appears on the face of the complaint"); *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 777 (N.D. Ill. 2015) ("A plaintiff need not plead around potential affirmative defenses"); 5 Fed. Prac. & Proc. Civ. § 1277 (3d ed.) (discussing the rule against raising defenses by motion, which is based on the view that motions to dismiss the complaint or to strike cannot be used to resolve disputed fact questions, and that courts should avoid "little trials" on the pleadings because under federal practice the pleadings are designed merely to provide notice of the respective claims and defenses of the adversaries).

As shown above, H-D has sufficiently pleaded a claim for copyright infringement and any defense to that claim—meritorious or not—is not appropriate for consideration on a motion to dismiss because no affirmative DMCA defenses appear on the face of H-D's Complaint.

---

Wisconsin statutory trademark infringement (*Id*. ¶ 133), and common law infringement and unfair competition (*Id*. ¶ 139).

Nevertheless, for completeness, H-D demonstrates below that SunFrog's DMCA defense has no merit and thus SunFrog has no defense that appears on the face of H-D's Complaint.

The DMCA, 17 U.S.C. § 512, provides for a limitation on the liability of service providers in certain circumstances. Under § 512(d), a "service provider" is one who, under certain circumstances, "refer[s] or link[s] users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link." But SunFrog does not even meet this threshold requirement of being a "service provider" because, as alleged in H-D's Complaint, SunFrog does much more than "refer or link users" to the Infringing Products, as shown below.

Even if SunFrog met the service provider threshold requirement, it is not protected by 17 U.S.C. § 512(d) because, contrary to SunFrog's assertions, SunFrog does have "the right and ability to control the infringing activity." (Dkt. 28, pp. 6-7.) To claim protection under 17 U.S.C. § 512(d), a service provider ("ISP") must establish three elements: (1) the ISP has no actual knowledge of the infringing material or activity, or, in the absence of actual knowledge, the ISP is not aware of facts or circumstances from which the infringing activity is apparent, or alternatively, if the ISP does have actual or constructive knowledge, it must "act[ ] expeditiously to remove, or disable access to, the material"; (2) the ISP does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and (3) upon notification of claimed infringement, the ISP must respond expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity. 17 U.S.C. § 512(d)(1-3); *see In re Aimster Copyright Litig.,* 252 F. Supp. 2d 634, 661 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003). Significantly, the DMCA's protection of an innocent service provider disappears "at the moment

the service provider loses its innocence, i.e., at the moment it becomes aware that a third party is using its system to infringe." *In re Aimster*, 252 F. Supp. 2d at 657.

Here, H-D alleges that SunFrog (1) has the right and ability to control the activity on SunFrog's Website, including the right to grant licenses to sellers to use designs created by others, to remove sellers' products, and to terminate its sellers (Dkt. 1 ¶¶ 54, 57-59, 64, 67, 69, 79); (2) SunFrog receives a financial benefit directly attributable to the infringing activity, i.e., SunFrog earns 54.5% of the retail sales price of the Infringing Products (*Id.* ¶ 58); and (3) SunFrog had actual knowledge of the Infringing Products and did not expeditiously remove them (*Id.* ¶¶ 3, 69), and after they were "removed" SunFrog allowed many of the same Infringing Products (and other products bearing the same designs) to again be advertised and sold on SunFrog's Website (*Id.* ¶¶ 77-80).

### E. SunFrog Is Not An Innocent Printer

In Section IV of SunFrog's Motion, SunFrog argues that it cannot be liable for monetary damages because it is an "innocent infringer" under 15 U.S.C. § 1114(2)(A), (Dkt. 28, p. 7), which limits only the monetary remedies for an action under 15 U.S.C. § 1125(a) or § 1125(d) as follows:

> "Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing."

Initially, because the innocent infringer provision is an affirmative defense, it is not appropriate for disposition on a motion to dismiss as discussed above. *See Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 770-71 (N.D. Ill. 2008) (rejecting Google's innocent infringer argument on a motion to dismiss because it requires the court to consider facts outside the four

corners of the complaint, which is improper on a motion to dismiss). Nevertheless, for completeness, H-D shows that SunFrog's innocent infringer defense—like its DMCA defense—has no merit.

To qualify for the innocent infringer exception to monetary relief, SunFrog must prove two elements: (1) SunFrog is "engaged solely within the business of printing the mark or violating matter for others" and (2) SunFrog is "innocent." 15 U.S.C. § 1114(2)(A). SunFrog conveniently fails to address these requirements in its Motion, no doubt because SunFrog cannot establish either.

### 1. SunFrog Is Not Just a Printer of the Infringing Products

The Lanham Act expressly states that the innocent infringer defense is available to printers only if they are "engaged solely in the business of printing the mark." As H-D alleges, however, SunFrog is also engaged in the business of operating an online marketplace and retail store on SunFrog's Website and in the marketing, promoting, advertising, shipping, and selling of the Infringing Products on SunFrog's Website. (Dkt. 1, ¶¶ 2-3, 54-85.) SunFrog thus does much more than printing and is not eligible for the innocent infringer defense. *See K & N Eng'g, Inc. v. Bulat*, 259 F. App'x 994, 995 (9th Cir. 2007) (finding defendants not engaged solely in the business of printing because they also advertised and sold decals).

### 2. SunFrog Is Not Innocent

SunFrog also fails to show that it is innocent. Initially, H-D has alleged that SunFrog is not innocent, namely, the H-D Marks are famous (Dkt. 1 ¶¶ 5, 31, 39-41, 88, 114-115); H-D placed SunFrog on express notice of H-D's trademark rights by submitting numerous objections starting in October 2016 and continuing for months (*Id*. ¶¶ 3, 68); despite such repeated objections and the fame of the H-D Marks, SunFrog nonetheless continued to market, promote,

14

advertise, sell, print, and ship Infringing Products (*Id.* ¶¶ 3-4, 76-81); and H-D alleged that SunFrog's actions were willful (*Id.* ¶¶ 1, 82, 91, 98, 104, 110, 118, 127, 132, 134, 140).

In addition, SunFrog erroneously applies the actual malice standard to determine whether a defendant is "innocent" (Dkt. 28, pp. 7-8), which requires the defendant to show that it did not know its products infringed the plaintiff's rights and that it did not recklessly disregard a high probability that its products infringed on such rights. *World Wrestling Fed'n, Inc. v. Posters, Inc.*, No. 99-C-1806, 2000 WL 1409831, at *3 (N.D. Ill. Sept. 26, 2000). The majority view, however, including the only cases from a Circuit Court of Appeals, adopts an "objective reasonableness" standard for determining whether a defendant is innocent. *Dial One of the Mid-S., Inc. v. BellSouth Telecomm., Inc.*, 269 F.3d 523, 525-27 (5th Cir. 2001); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, No. H-08-1906, 2009 WL 3570387, at *6 (S.D. Tex. Oct. 30, 2009), *aff'd in part, rev'd in part*, 671 F.3d 526 (5th Cir. 2012) (affirming the district court's holding that the innocent printer defense did not apply because the defendant failed to show its infringement was objectively reasonable); *Delta Air Lines, Inc. v. Wunder*, No. 1:13-CV-3388-MHC, 2015 WL 11242003, at *13 (N.D. Ga. Dec. 15, 2015); *Conopco, Inc. v. Rosa Distributors*, 967 F. Supp. 1068, 1071 (N.D. Ill. 1997); *Polo Fashions, Inc. v. Ontario Printers, Inc.*, 601 F. Supp. 402, 403-04 (N.D. Ohio 1984). The Fifth Circuit Court of Appeals, in a case decided after *World Wrestling*, expressly rejected the actual malice test for various reasons, including that the actual malice test is used when courts attempt to balance regulations on First Amendment speech, as opposed to commercial speech as is the case here with SunFrog's activities. *Dial One*, 269 F.3d at 526. Thus, the "objective reasonableness" standard should govern here.

Under the "objective reasonableness" standard, the innocent infringer defense is allowed only if, regardless of state of mind, the defendant's conduct is reasonable. As the Fifth Circuit

characterized this standard, "printers cannot be naïve and be like ostriches and put their heads in the sand and ignore obvious facts." *Nat'l Bus. Forms & Printing*, 2009 WL 3570387, at *6 (*quoting Polo Fashions*, 601 F. Supp. at 403-04). Rather, when a printer is approached to make a product bearing a mark that may infringe a trademark, it has an affirmative duty to determine the legitimacy of the person placing the order. *Conopco*, 967 F. Supp. at 1070-71 (*quoting Polo Fashions*, 601 F. Supp. at 403). The printer must make a reasonably inquiry, which will be determined from all the facts and circumstances. *Id.* Some of the factors to be considered include: (1) the extent of recognition and notoriety of the mark in issue; (2) the printer's prior experience working for legitimate companies and the trademark owners and related industries; (3) the circumstances of the transaction; (4) the submitted basis for or proof of authorization provided by the customer; and (5) whether the printer contacts the owner of the mark. *Polo Fashions*, 601 F. Supp. at 403–04. "[B]lind reliance on . . . 'check the box' representations from a universe of unknown internet purchasers, affords no objectively reasonable basis for an honest belief that the purchasers are in fact authorized to order [plaintiff's] marks from [defendant]."[4] *Nat'l Bus. Forms & Printing,* 2009 WL 3570387, at *6.

Finally, the Court in *Ohio State Univ.*, in the context of finding the case exceptional for purposes of attorney's fees, rejected a similar argument from the defendant shirt printer, stating that "Plaintiff provided Defendants repeated actual notice of much of the infringement involved, and even if they had not received such notice, no reasonable person would have thought that selling t-shirts with identical marks to those licensed and held by Plaintiff was reasonable. Defendants thus knew or had reason to know that they were selling counterfeit, infringing

---

[4] SunFrog's defense here relies on this same argument. Specifically, SunFrog argues that "[u]sers who create Mockups on SunFrog's website must affirmatively check a box stating that they are not violating the intellectual property rights of any third parties by uploading and selling Mockups through SunFrog's website." (Dkt. 28, p. 2.)

goods." *Ohio State Univ.*, 16 F. Supp. 3d at 921. Similarly here, H-D provided SunFrog repeated actual notices of widespread infringement involving hundreds of products. But even if SunFrog had not received such notice, no reasonable person would have thought that countless sellers offering hundreds of different t-shirts with marks identical to the iconic brands of H-D was reasonable. As H-D alleges, SunFrog knew, or at a minimum had reason to know that they were selling counterfeit, infringing goods, and acting like ostriches and putting their heads in the sand and ignoring obvious facts is not a defense.

## IV.     CONCLUSION

For the reasons and authorities set forth above, H-D respectfully requests that the Court deny SunFrog's Motion to Dismiss.

Dated this 11th day of August, 2017      **MICHAEL BEST & FRIEDRICH LLP**

By: *s/Katherine W. Schill*
Katherine W. Schill, SBN 1025887
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
kwschill@michaelbest.com
Phone: (414) 223-2527
Fax: (414) 277-0656

**KELLY IP, LLP**
David M. Kelly
Stephanie H. Bald
Sabrina Y. Shyn
1919 M Street NW, Suite 610
Washington, D.C. 20036
david.kelly@kelly-ip.com
stephanie.bald@kelly-ip.com
sabrina.shyn@kelly-ip.com
Phone: (202) 808-3570
Fax: (202) 354-5232

**Attorneys for Plaintiffs
H-D U.S.A., LLC and
Harley-Davidson Motor Company Group, LLC**